AF Approval BAG Chief Approval MRK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:23-cr-308-WFJ-AEP

ROBERT GONZALEZ

# PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, and the defendant, Robert Gonzalez, and the attorney for the defendant, Louis Martinez, Esq. mutually agree as follows:

## A. Particularized Terms

### 1. Count(s) Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment. Count One charges the defendant with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. §1349.

### 2. Maximum Penalties

Count One carries a maximum sentence of 20 years imprisonment, a fine of $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than three years, and a special assessment of $100 per felony count for individuals, and $400 per felony count for persons other than individuals, such as

corporations. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First: Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in the indictment; and

Second: the Defendant knew the unlawful purpose of the plan and willfully joined in it

The elements of Wire Fraud are:

First: the Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

Second: the false pretenses, representations, or promises were about a material fact;

Third: the Defendant acted with the intent to defraud; and

Fourth: the Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

4. Counts Dismissed

At the time of sentencing, the remaining count(s) against the defendant, Counts Two and Three, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the Department of Veterans Affairs, in an amount to be determined by the Court.

7. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea

8. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States

will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. Role in Offense - Downward Adjustment

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant receive a downward adjustment of two levels pursuant to USSG § 3B1.2, regarding the defendant's role in the offense. The parties understand that such a recommendation is not binding on the Court, and if not accepted by this Court, neither the United States nor the defendant will be

allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty. Further, the parties agree that the defendant may request a downward adjustment of greater than two levels. The parties understand that such a request may not be accepted by the Court, and if not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

10. Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the

cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

11. Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

12. Cooperation - Responsibilities of Parties

a. The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will

impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b. It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1) The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2) The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby

agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3) The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4) The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5) The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

13. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. § 2461(c), as well as 18 U.S.C. § 982(a)(3), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the $58,851.03 in proceeds the defendant admits he obtained, as the result of the commission of the offense(s) to which the defendant is pleading guilty. The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offense(s), and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction. The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s) and consents to the entry of the forfeiture order into the Treasury Offset Program. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees and consents to waive his right to file a Petition for Remission or Mitigation and withdraws any Petition for Remission or Mitigation previously submitted.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the

forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

14. Removal - Notification

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district

court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.

**B. Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the

count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any

assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant

questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

The defendant, ROBERT GONZALEZ, was a resident of the Southern District of Florida. The defendant, a Service-Disabled Veteran ("SDV") was a registered agent and 51% owner of Maxon Group, LLC ("Maxon"), a Service-Disabled Veteran-Owned Small Business ("SDVOSB"). The defendant co-owned Maxon, a Florida limited liability company headquartered in Miami, Florida, with coconspirator William Gonzalez ("W. Gonzalez"). For a time, both the defendant and W. Gonzalez had signatory authority on Maxon's Financial Institution #3 account ending in 8345 ("Maxon 8345").

From at least as early as July 2016, and continuing through in or about April 2021, the defendant and coconspirators described below combined and conspired together to use Maxon to obtain a SDVOSB set-aside construction contract and to maintain a façade that Maxon was in control of the contract, concealing from the Department of Veterans Affairs (the "VA") that Maxon was acting as a pass-through company.

The Federal Contracting Program and Pass-Through Company Schemes

The SDVOSB program was designed to help SDV obtain government contracts by "setting aside" certain contracts for small businesses owned and controlled by SDVs. This procurement program restricted competition for certain government contracts to SDVOSBs and awarded "set-aside" contracts for SDVOSBs where certain criteria were met. A "set-aside" award was limited to particular categories of businesses that met the relevant Small Business Administration program participation criteria.

Federal regulations promulgated to implement the SDVOSB program required that one or more SDVs control the management and daily business operations of the business concern. Control by one or more SDVs meant that both long-term decision-making and the day-to-day management and administration of the business operations were conducted by one or more SDVs.

The involvement of pass-through companies violates the intent and purpose of the SDVOSB program. Pass-through schemes typically consist of a "program-eligible company" being used by an ineligible company to qualify for and

obtain SDVOSB set-aside or sole-source contracts. The program-eligible company then "passes" the work and the majority of the benefits of the contract to the ineligible company. In a pass-through scheme, the scope of involvement of the ineligible company, and the true nature of its relationship with the program-eligible company, is not disclosed to the government agencies responsible for oversight of the SDVOSB programs and participants or the agencies or departments awarding or managing the contracts. Additionally, the two companies often have overlapping employees.

The Coconspirators

Matthew West ("M. West"), a resident of the Southern District of Florida, was the secretary and vice-president of West Construction, Inc. ("West"). West was a Florida corporation reportedly headquartered in Lantana, Florida. M. West had signatory authority on West's bank accounts. West was a business concern with projects in Florida, Liberia (West Africa), and throughout the Caribbean.

Kevin Kutina ("Kutina"), a resident of the Southern District of California and an SDV, was the director, president, secretary, and treasurer of Kevcon, Inc. ("Kevcon"). Kevcon was a California corporation registered in Florida as a foreign corporation with a registered agent in Tampa, Florida. Kutina had signatory authority on Kevcon's financial accounts. Kevcon was an SDVOSB.

On or about July 1, 2016, the VA issued a Request for Proposals ("RFP") for contact number VA248-16-C-0174—the Cancer Infusion Therapy Center Contract ("CITC contract"). The CITC contract was valued between $5

million and $10 million and was for the construction of a 14,909 square-foot building to augment the Bay Pines VA Medical Center's existing radiation oncology clinic and enable VA health care providers to treat more veterans diagnosed with various types of cancer in an environment that was accessible and patient-centered. The CITC contract was a 100-percent SDVOSB set-aside, which required that only bids from qualified SDVOSBs be considered.

In July 2016, M. West contacted his bonding company ("Indemnity Company 1") to tell them that he wanted to pursue the CITC contract with Kevcon. However, Indemnity Company 1 would not back a bond for Kevcon, because Kevcon was in a dispute with another indemnity company. Consequently, M. West told Indemnity Company 1 that he would have Maxon bring Kevcon on as a teaming partner to meet the technical requirements without the risk of Kevcon as the prime contractor. M. West then provided Indemnity Company 1 with copies of two teaming agreements, one for West and Maxon and another for Maxon and Kevcon. The teaming agreement between West and Maxon agreed that Maxon would award a subcontract to West for project and site management and that Maxon would not utilize the services of any other company in these areas of responsibility. Both the defendant and M. West signed this teaming agreement. As a result, Indemnity Company 1 entered a general indemnity agreement with Maxon signed by the defendant (ROBERT GONZALEZ) and W. Gonzalez. This teaming agreement was not disclosed to the VA.

In addition to securing bonding, M. West solicited a technical proposal from Kutina to be provided to Maxon for purposes of submitting it to the VA in response to the RFP. This document, as well as teaming agreements, were mailed electronically to the defendant. The defendant and W. Gonzalez, on behalf of Maxon, revised the technical proposal provided by M. West to include the defendant's and W. Gonzalez's information, and submitted it to the VA along with a price proposal on or about Augst 2, 2016. The technical proposal, signed by the defendant, included the teaming agreement between Kevcon and Maxon, arranged by M. West, and signed by both the defendant and Kutina. This teaming agreement certified that Maxon would award a subcontract to Kevcon for project and site management and that Maxon would not utilize the services of any other company in these areas of responsibility. The proposal touted that the "Maxon / Kevcon (MK)" team had a 28-year history, despite the fact that the defendant and W. Gonzalez had actually never met Kutina. Further, and also unbeknownst to the VA's selection committee, the proposed project manager and the quality control manager for the CITC project had ended their employment with Kevcon approximately four years prior to the proposal's submission, and the proposed construction project superintendent was deceased.

In relying on the information provided in the technical proposal, the selection committee determined that the MK team had the expertise required for the CITC project. On or about September 28, 2016, the VA awarded Maxon the CITC contract, and the defendant signed the Award Notice letter.

On or about November 16, 2016, the defendant and conspirators attended a pre-construction conference at Bay Pines. At the conference, the conspirators informed the VA contracting officers that the project manager and project superintendent had changed. However, the replacements, R.P. and R.W., were represented to be Kevcon employees when they were actually West employees. This sharing of employees was not disclosed to the VA.

Kutina and West maintained control of the construction project, despite Maxon being the prime contractor. For example, when the VA requested project information from Maxon, Kutina and M. West would provide the information to the defendant and W. Gonzalez to give to the VA. For example, certified payrolls for both West and Kevcon were electronically sent from an employee of West to Kutina, W. Gonzalez, and the defendant. To make it appear that R.P. and R.W. worked for Kevcon, Kutina would and did change the payroll forms from West forms to Kevcon forms. After changing the payroll forms, Kutina directed W. Gonzalez and the defendant to submit the "clean" payroll forms to the VA. Additionally, when the VA requested a subcontracting compliance review, the defendant requested records from M. West and Kutina, including the teaming agreement between Maxon and West. Kutina told the defendant in an email, "you can never, NEVER, "NEVER" expose the teaming agreement…It isn't wise to expose it due to some of the language that is contrary to the SDVOSB program." This teaming agreement was not provided to the VA.

Further evidencing M. West and Kutina's control of the project, West and Kevcon received the lion's share of the funds distributed by the VA. Throughout the conspiracy, the conspirators caused the submission of electronic invoices to the VA, via interstate wires, for the purpose of obtaining contract payments. As a result of the invoices, the VA released funds to be paid from the U.S. Treasury and electronically transferred, via interstate wires, to Maxon 8345. For example, on or around September 18, 2018, after an electronically submitted invoice, the U.S. treasury electronically transferred funds in the amount of $112,016.51 to Maxon 8345 via interstate wire.

As a result of the false and fraudulent statements provided to the VA during the execution of this pass-through scheme, the defendant and coconspirators caused the VA to make payments to Maxon totaling approximately $4,836,043.24. Maxon retained and received approximately $189,965.48 of these funds. The defendant personally received approximately $58,851.03 in proceeds for his role in this conspiracy.

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no

other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 14 day of October 2026.

GREGORY W. KEHOE
United States Attorney

Robert Gonzalez
Defendant

Tiffany E. Fields
Assistant United States Attorney

Louis Martinez, Esq.
Attorney for ~~William~~ Gonzalez
Robert

Samantha J. Newman
Assistant United States Attorney

Michael R. Kenneth
Assistant United States Attorney
Chief, Economic Crimes Section